IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHARLES M. TORRENCE,

        Petitioner,

v.                                        Case No. 20-3310-JWB

HAZEL PETERSON, WARDEN,

        Respondent.

**MEMORANDUM AND ORDER**

This matter is before the court on Petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) and his motions for post-conviction discovery (Docs. 24, 25.)  The motions are briefed and ripe for review.  (Docs. 1, 13, 19, 24, 25, 26, 27.)  The court has reviewed those portions of the state court record which are pertinent to the issues raised in the application and finds that an evidentiary hearing is not warranted.  Petitioner's motions (Docs. 1, 24, 25) are DENIED for the reasons set forth herein.

I.      **Background**

Following a jury trial, Petitioner was convicted of three counts of aggravated robbery, one count of attempted aggravated robbery, one count of robbery, and one count of criminal possession of a firearm.  Petitioner was sentenced to 725 months' imprisonment.  In federal habeas proceedings, the state court's factual findings are presumed correct, and Petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Here, Petitioner does not challenge the state court's findings.  Accordingly, the court incorporates the Kansas Court of Appeal's version of the facts:

1

In 2013, the State charged Torrence in three cases arising from a series of robberies in Wichita. In one case, Torrence was charged with attempted aggravated robbery of a retail store when he claimed to have a gun and demanded money from a cashier. In the second case, Torrence was charged with aggravated robbery and criminal possession of a firearm for brandishing a gun and taking a smart phone from an electronics store. In the last case, Torrence was charged with three counts of aggravated robbery for separate holdups of two retail stores and a grocery store. The cases were handled jointly for pretrial matters.

Initially, Torrence asked the district court to appoint a lawyer to represent him, and the district court did so in mid-April 2013. Several weeks later, Torrence filed a motion to represent himself. After a hearing, the district court granted the motion but had the appointed lawyer remain as standby counsel to assist Torrence.

Torrence then filed a motion for appointment of a mental health professional to support a defense of mental disease or defect. The district court denied the motion as lacking any legal basis. Torrence promptly filed another motion effectively making the same request and two motions to dismiss his standby counsel.

After the district court denied one of the motions to dismiss, the standby lawyer filed a motion for a competency evaluation of Torrence. In the motion, the lawyer submitted he had a "good faith belief to question" Torrence's ability to assist in his defense. The district court granted the motion but did not immediately enter an order for a mental evaluation. Torrence then personally prepared and filed a motion to reconsider and explained the true purpose of the evaluation was to secure expert testimony to support his mental defect defense and not because he lacked the capacity to understand the proceedings. The district court directed that the competency evaluation be performed. In a very short hearing in August, the district court noted that it had received a report showing Torrence to be competent to stand trial. Torrence appeared in person and with his standby lawyer. No one objected to the district court's conclusion.

In October 2013, Torrence changed his mind about self-representation and asked that a new lawyer be appointed to handle his defense. The district court discharged the standby lawyer and appointed Bradley Sylvester to represent Torrence. Three months later, Torrence filed another motion to represent himself. The district court granted the motion in February 2014, relieving Sylvester of any further responsibility. The record on appeal indicates the district court did not appoint standby counsel.

In late April, Torrence again asked for an appointed lawyer. And the district court appointed Terry Beall. The jury trial of the consolidated cases began in late January 2015 with Beall representing Torrence. The jury convicted

> Torrence as charged. After the guilty verdicts were received, Torrence again asked and was permitted to represent himself. He filed various posttrial motions, including one for a new trial alleging he had been inadequately represented. The district court held an evidentiary hearing on the motion at which Torrence represented himself. He called Beall and an investigator who worked for Beall as witnesses to establish his claim of ineffective representation. He did not call Sylvester or the standby lawyer. The district court denied all of the posttrial motions and sentenced Torrence to serve a controlling prison sentence of 725 months.
>
> Torrence appealed and filed a motion to handle the appeal himself. We granted his request. Torrence raised an array of issues, including the ineffectiveness of his trial lawyers, thereby following through on the point he raised and litigated in his new trial motion. This court affirmed Torrence's convictions and sentences. *State v. Torrence*, No. 114,546, 2017 WL 1535137 (Kan. App. 2017) (unpublished opinion). The Kansas Supreme Court denied his petition for review.
>
> Torrence then drafted and filed his motion for habeas corpus relief under K.S.A. 60-1507. The district court summarily denied the motion. Torrence appealed that ruling and again sought to represent himself in this appeal. We again granted his request.

*State v. Torrence*, 475 P.3d 1294 (Table), 2020 WL 6930802, at *1-2 (Kan. Ct. App. 2020) (unpublished opinion).

On November 25, 2020, the Kansas Court of Appeals affirmed the district court's denial of Petitioner's K.S.A. 60-1507 motion.  On December 17, 2020, Petitioner filed this application for relief under 28 U.S.C. § 2254.  (Doc. 1.)  Later, on July 16, 2021, Petitioner filed two motions for post-conviction discovery for the results of DNA evidence, incident reports, evidence chain of custody receipts, and fingerprint evidence concerning a firearm.

## II.    Standard

This court's ability to consider collateral attacks on state criminal proceedings is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under the highly deferential standard contained in AEDPA, if Petitioner's claim has been decided on the merits in state court, this court may only grant relief under two circumstances:

1) if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or 2) if the state court decision "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2).  Since Petitioner does not challenge the state court's factual findings, the second basis for relief does not apply in this case.  As for the first basis for potential habeas relief, the Tenth Circuit has repeatedly held:

> A state court decision is "contrary to" Supreme Court precedent in two circumstances: (1) when "the state court applies a rule that contradicts the governing law set forth in [the Court's] cases"; or (2) when "the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from" that reached by the Court. *Williams v. Taylor*, 529 U.S. 362, 406, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  A state court decision constitutes an "unreasonable application" of Supreme Court precedent if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S. Ct. 1495.  Thus, "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 411, 120 S. Ct. 1495; *see also Thomas v. Gibson*, 218 F.3d 1213, 1219-20 (10th Cir. 2000) (discussing *Williams*).

*Hamilton v. Mullin*, 436 F.3d 1181, 1186 (10th Cir. 2006).

The AEDPA standard "'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court' and requires the petitioner to show 'that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error beyond any possibility for fairminded disagreement.'" *Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 738–39 (10th Cir. 2016) (quoting *Burt v. Titlow*, 571 U.S. 12, 19-20 (2013) (internal quotation marks omitted); *see also Frost v. Pryor*, 749 F.3d 1212, 1225 (10th Cir. 2014) ("Under the [fairminded jurists] test, if all fairminded jurists would agree the state court decision

4

was incorrect, then it was unreasonable and the habeas corpus writ should be granted. If, however, some fairminded jurists could possibly agree with the state court decision, then it was not unreasonable and the writ should be denied.") (brackets in original).  Under this standard, the state court decision must "be given the benefit of the doubt."  *Id.* at 739 (citing *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)).

This court will only consider alleged violations of federal law in reviewing Petitioner's application. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Moreover, the federal questions must ordinarily have been first presented to the state courts to be considered by this court. *Picard v. Connor*, 404 U.S. 270, 277-78 (1971); *but see* 28 U.S.C. § 2254(b)(2) (permitting denial on the merits, despite failure to exhaust state remedies).

## III.   Analysis

Petitioner's habeas application states five grounds for relief: 1) denied assistance of counsel at his mental competency hearing in violation of the Sixth Amendment; 2) ineffective assistance of counsel for failing to investigate certain witnesses; 3) denied due process by state district court's lack of subject matter jurisdiction; 4) insufficient evidence to support convictions for aggravated robbery and criminal possession of a firearm; and 5) prosecution denied Petitioner due process rights by withholding impeachment evidence.[1]  Lastly, Petitioner argues he is entitled to post-conviction discovery of DNA evidence, fingerprint analysis, and other reports concerning his underlying criminal trial.  Because Petitioner is proceeding pro se, the court is to liberally construe his filings.  *United States v. Pinson*, 585 F.3d 972, 975 (10th Cir. 2009).  However, liberally

---

[1] The government argues Petitioner has procedurally defaulted claims one, three, four, and five.  (*See generally* Doc. 13 at 10-29.)  However, it is not entirely clear whether the Kansas Court of Appeals meant to resolve the claims on the merits, or, alternatively, to resolve them on the basis of a procedural bar.  In denying Petitioner's motions, the Kansas Court of Appeals addressed the merits of each claim.  Regardless of procedural default, under Tenth Circuit law, the court may choose when to "ignore the exhaustion requirement altogether and deny the petition on the merits [since] none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2)."  *Fairchild v. Workman*, 579 F.3d 1134, 1156 (10th Cir. 2009) (quoting *Harris v. Lafler*, 553 F.3d 1028, 1031 (6th Cir. 2009)).

construing filings does not mean supplying additional factual allegations or constructing a legal theory on Petitioner's behalf. *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

### A.      Petitioner's Competency to Stand Trial

Petitioner alleges he was denied assistance of counsel at his mental competency hearing before the state district court, in violation of the Sixth Amendment. (Doc. 1 at 5.) Petitioner argues the state court "denied him counsel at the competency hearing and that such denied him both his constitutional and statutory right to counsel at that critical stage in the criminal proceedings." (*Id.* at 22.) Specifically, Petitioner argues that his court-appointed standby counsel remained silent during his competency hearing and failed to subject the court's findings to any "'meaningful adversarial testing.'" (*Id.*) Yet, Petitioner's argument fails to clear the AEDPA's burden of providing clearly established Supreme Court law.

In ruling on Petitioner's 60-1507 motion, the state district court determined Petitioner was competent to stand trial and that "[n]o irregularities, legally or factually, occurred at either hearing." (Doc. 16, Vol. XLII at 67.) On review, the Kansas Court of Appeals affirmed the denial of Petitioner's Sixth Amendment claim. The panel noted that "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Torrence*, 2020 WL 6930802, at *3 (quoting *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975)). Moving to Petitioner's issue with his competency hearing, the panel explained:

> Torrence's second point fails for essentially the same reason. He now complains that he was not fully represented at the competency hearing because he had only standby counsel. But Torrence could have raised that complaint in the hearing on his posttrial motions and did not. Moreover, Torrence does not claim he actually was incompetent and has not offered any evidence to support that position. He has not established some actual prejudice visited on him in the direct criminal case as a result of the competency hearing or his self-representation during that aspect of the case.

*Id*.  This court concludes that the panel did not unreasonably apply *Faretta* in rejecting Petitioner's Sixth Amendment claim.

Under the AEDPA, the court must deny Petitioner's claim if it "is contingent upon a rule of law not clearly established at the time the state court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 380 (2000).  Determining whether the law is clearly established is a threshold question under § 2254(d)(1).  *Id*. at 390.  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id*. at 412.  "Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context."  *House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  For Sixth Amendment purposes, a defendant has the right to waive counsel and personally defend himself at trial.  *Faretta*, 422 U.S. at 819.  And "[w]hile the Constitution does not force a lawyer upon a defendant, it does require that any waiver of the right to counsel be knowing, voluntary, and intelligent."  *Iowa v. Tovar*, 541 U.S. 77, 87-88 (2004).

Here, Petitioner fails to illustrate how his argument is supported by clearly established Supreme Court precedent.  Rather, Petitioner's argument is rooted in various circuit courts, including the Tenth Circuit, finding that a competency hearing is a critical stage of criminal proceedings, at which the defendant, through the Sixth Amendment, is entitled to representation by counsel.  *See United States v. Collins*, 430 F.3d 1260, 1264 (10th Cir. 2005) (citing list of circuit courts that have ruled competency hearings are considered a critical stage during criminal proceedings).  Other federal courts of appeal have likewise concluded that a competency hearing is a critical stage of a criminal proceeding to which the Sixth Amendment right to counsel attaches. *See, e.g., United States v. Kowalczyk*, 805 F.3d 847, 857 (9th Cir. 2015); *Appel v. Horn*, 250 F.3d

7

203, 215 (3d Cir. 2001); *United States v. Klat*, 156 F.3d 1258, 1262 (D.C. Cir. 1998); *United States v. Barfield*, 969 F.2d 1554, 1556 (4th Cir. 1992).  Some of those courts even concluded that where, as here, a defendant has asserted his right to self-representation, the Sixth Amendment demands representation of counsel at a competency hearing.  *See, e.g., United States v. Ross*, 703 F.3d 856, 871 (6th Cir. 2012); *United States v. Zedner*, 193 F.3d 562, 567 (2d Cir. 1999); *Klat*, 156 F.3d at 1263.

However, none of those cases cites a Supreme Court case for that specific proposition. Instead, these cases tend to reason from some combination of the statutory mandate in 18 U.S.C. § 4247(d) (which does not apply to state proceedings) that counsel be appointed for federal competency hearings, along with Supreme Court cases that are similar, but not directly on point. Consistent with the lack of Supreme Court precedent in the cited cases, the court's own research indicates that the Supreme Court of the United States has never addressed whether a defendant suffers a Sixth Amendment violation when he proceeds pro se, with appointed standby counsel, at his own competency hearing.[2]  And therein lies the rub.  This court's authority to grant relief under 28 U.S.C. § 2254 is limited, as relevant here, to circumstances where the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*." 28 U.S.C. § 2254(d)(1) (emphasis added). Here, the Kansas Court of Appeals correctly identified *Faretta*, as controlling Supreme Court precedent regarding Petitioner's constitutional right to self-representation. *Torrence*, 2020 WL 6930802, at *3 (relying on *Faretta*, 422 U.S. at 834).  Accordingly, in the absence of controlling Supreme Court precedent in the specific context of a defendant's decision to exercise his right to

---

[2] In fact, the court found no such cases in the context of a competency hearing with or without standby counsel, so neither the presence of standby counsel, nor the adequacy of such counsel's performance at the competency hearing, appears to be material to the court's conclusion that a lack of Supreme Court precedent in this particular context precludes relief in this case.

self-representation in a competency hearing, *House,* 527 F.3d at 1016, Petitioner cannot show that the state court's decision was contrary to, or an unreasonable application of, Supreme Court precedent, and his application for relief on this ground must be denied.

### B.      Petitioner's Counsel Was Not Ineffective

Petitioner contends that his trial counsel was ineffective for failing "to investigate Petitioner's requested witnesses and other sources of evidence material to the case" and not interviewing or subpoenaing "key defense witnesses and physical evidence for trial." (Doc. 1 at 6.) Because of this, Petitioner argues he was deprived "of potentially exculpatory evidence and evidence establishing his theory of defense (mistaken identification)[.]" (*Id.* at 30.) Petitioner's argument does not rise to the level of ineffective assistance of counsel.

A claim of ineffective assistance of counsel in violation of the Sixth Amendment requires Petitioner to show that 1) his counsel's performance fell below an objective standard of reasonableness; and 2) but for his counsel's unreasonable errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). "These two prongs may be addressed in any order, and failure to satisfy either is dispositive." *Grant v. Royal*, 886 F.3d 874, 903 (10th Cir. 2018) (quoting *Hooks v. Workman*, 689 F.3d 1148, 1186 (10th Cir. 2012)).

In evaluating the performance of counsel, the Supreme Court provided the following:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

. . .

Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 689-90 (internal citations omitted).  Because the Kansas Court of Appeals decided the merits of Petitioner's ineffective counsel claims under the correct legal standard, this court only determines whether its application of federal law was objectively unreasonable.  *See Williams*, 529 U.S. at 409-11.

On review, the Kansas Court of Appeals rejected Petitioner's claim:

In his motion for new trial and motion for arrest of judgment, Torrence asserted trial counsel was ineffective for numerous reasons. On appeal, Torrence limits his argument, claiming trial counsel failed to investigate V.G., C.C., M.C., and A.S. as potential witnesses. He claims his cousin, V.G., the owner of the white Dodge Durango identified as the getaway vehicle in the Walmart robbery, would have testified: (1) her vehicle was inoperable at the time of the crime and therefore could not have been the getaway vehicle; (2) Torrence had facial injuries at the time of the incidents; and (3) V.G. and Barfell had been in a fight, providing motive for Barfell to retaliate against V.G. and Torrence. He further claims A.S., a physician's assistant who treated him for an unrelated medical condition prior to his arrest, would have testified he had facial injuries during the timeframe in which the incidents occurred.

Torrence asserts testimony regarding his facial injuries would have supported his theory of mistaken identification because the State's witnesses indicated he did not have any facial injuries. He claims M.C., a witness to the Dollar General robbery, would have testified he told the investigating officers A.L.'s attacker was "possibly Hispanic," further supporting his theory of mistaken identification. He does not allege C.C., a witness who identified the getaway vehicle in the Walmart robbery, would have provided favorable testimony; rather, he argues trial counsel's investigation of C.C. was inadequate.

10

At the posttrial evidentiary hearing, Torrence's trial counsel testified he hired an investigator to help review the evidence and interview potential witnesses. Trial counsel indicated he reviewed the evidence and discussed the matter with his investigator and concluded it would not be beneficial to have V.G., C.C., M.C., or A.S. testify at trial. Moreover, trial counsel was concerned some of the witnesses' testimony would hurt Torrence's case or limit his ability to cross-examine other witnesses. Trial counsel's investigator testified in detail regarding her investigation and that testimony supports trial counsel's decision not to call the witnesses Torrence now complains of.

The district court took the matter under advisement. Subsequently, the district court held a hearing where it provided an extensive oral ruling denying Torrence's motions.

The district court made specific findings with regard to each of the potential witnesses. It noted counsel's investigator contacted A.S. regarding Torrence's alleged facial injury, but the medical records showed Torrence did not have an injury on his face. A.S. specifically recalled an injury on Torrence's extremities. Additionally, the district court found Torrence's mugshot from March 25, 2013, showed no indication of a facial injury. The district court further noted trial counsel was aware Barfell stated Torrence did not have facial injuries during the timeframe in which the crimes were committed.

With regard to V.G., the district court noted counsel's investigator learned Barfell told Detective Alexander she drove Torrence to Walmart to commit a robbery in V.G.'s Dodge Durango. Detective Alexander spoke with V.G., and she admitted she owned a 1999 Durango and loaned it to Barfell on the day in question. The investigator attempted to contact V.G. but was unsuccessful. In light of the evidence at trial, the district court found V.G.'s Durango was the vehicle used in the Walmart robbery.

Regarding C.C., the district court found counsel and his investigator reviewed the discovery and learned C.C. witnessed the Walmart robbery and told police the getaway vehicle was an SUV with a gray, primer-colored hood. C.C. provided no other information. The district court found C.C.'s statement immaterial.

Finally, with respect to M.C., the district court noted he described A.L.'s attacker in the Dollar General robbery as either black or Hispanic but could not clearly identify him. The district court found M.C.'s testimony was neither exculpatory nor helpful.

As previously stated, we do not reweigh evidence or credibility; rather, we review the district court's findings to determine whether they are supported by substantial competent evidence. *Fuller*, 303 Kan. at 485. Here, the district

> court's findings are supported by substantial competent evidence. Trial
> counsel's decisions regarding the scope of his investigation and cross-
> examination were appropriate strategic decisions given the information he
> discovered with his investigation. "[S]trategic choices made after thorough
> investigation of law and facts relevant to plausible options are virtually
> unchallengeable." *Strickland v. Washington*, 466 U.S. 668, 690, 104 S. Ct.
> 2052, 80 L.Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984). Based on the district
> court's findings and the evidence presented at the posttrial hearing, Torrence
> has failed to show counsel's performance was objectively deficient; therefore,
> he was not prejudiced and we need not address that prong. Accordingly, we find
> his claim of ineffective assistance of counsel fails. *See Sola–Morales*, 300 Kan.
> at 882.

*State v. Torrence*, 394 P.3d 152 (Table), 2017 WL 1535137, at *8-9 (Kan. Ct. App. 2017)

(unpublished decision).  The court agrees and finds that the state court's conclusion on this issue

was neither contrary to, nor an unreasonable application of, *Strickland*.  Petitioner offers no

meritorious argument or citation to authority that would lead this court to a different conclusion.

Accordingly, Petitioner's application for relief on this ground is denied.

### C.   State District Court Had Subject Matter Jurisdiction

Next, Petitioner raises the same argument he made in his direct appeal, which is "the district

court lacked subject matter jurisdiction to convict and sentence him on the charges in 13-CR-1383

and 13-CR-1713 after his cases were consolidated for trial."  *See Torrence*, 2017 WL 1535137, at

*2; (Doc. 1 at 31-36.)  Petitioner argues the state "unlawfully amende[ed] the complaint in 13 CR

0942, to include the five counts from 13 CR 1383 and 13 CR 1713[.]"  (*Id*. at 32.)  Petitioner's

argument holds no merit.

On review, the Kansas Court of Appeals found that not only did Petitioner fail to adequately

brief this issue, but:

> Furthermore, Torrence's argument lacks merit as "[t]he court may order two or
> more complaints, informations or indictments against a single defendant to be
> tried together if the crimes could have been joined in a single complaint,
> information or indictment." K.S.A. 22–3203. Torrence does not argue the
> crimes could not have been charged in a single complaint, indictment, or

information. The charges were related to an ongoing series of property crimes; therefore, they could be charged in the same complaint, indictment, or information. *See* K.S.A. 22–3202(1). Consolidating multiple cases for trial does not cause the charges in each complaint to lose their individual identity; rather, "there is a single trial and the jury is to determine each charge on the evidence submitted on each count of the separate complaints." *State v. Taylor*, 262 Kan. 471, 479, 939 P.2d 904 (1997), *abrogated on other grounds by State v. Berreth*, 294 Kan. 98, 123, 273 P.3d 752 (2012). We find the district court had subject matter jurisdiction to preside over all of the charges pending against Torrence in the three cases consolidated by agreement for one jury trial.

*Torrence*, 2017 WL 1535137, at *2.  This court agrees.

Here, Petitioner has failed to offer any meaningful argument as to how the court lacked subject matter jurisdiction.  Petitioner provides no case law on the matter and only points to K.S.A. 22-3203 as somehow being violated.  (*See generally* Doc. 1 at 31-36.)  The Kansas Court of Appeals' resolution of this claim was not an unreasonable application of clearly established federal law.  Accordingly, Petitioner's application for relief on this ground is denied.

**D.    Petitioner's Convictions Are Supported by Sufficient Evidence**

Petitioner asserts his due process rights were violated because his convictions for aggravated robbery and criminal possession of a firearm lacked sufficient evidence.  (Doc. 1 at 10.)  Specifically, Petitioner argues that his stipulation to the fact that he was a prior convicted felon was insufficient to show a violation of K.S.A. 21-6304; and, further, the government "presented no evidence that Petitioner took the phone by force or threat of bodily harm."  (Doc. 1 at 40, 43.)  The government argues the Kansas Court of Appeals reasonably rejected both claims Petitioner advances.  (Doc. 13 at 22-24.)  Petitioner's arguments are not supported by the record or caselaw.

Under Supreme Court precedent, a conviction is supported by sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Matthews v. Workman*,

577 F.3d 1175, 1183 (10th Cir. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Because the Kansas Court of Appeals decided the merits of Petitioner's insufficient evidence

claims under the correct legal standard, this court only determines whether its application of federal

law was objectively unreasonable. *Id.*

On review, the Kansas Court of Appeals rejected Petitioner's insufficiency claims with the

following analysis:

> At trial, the manager of the Cricket Wireless store, S.C., testified Torrence
> entered the store on the evening of February 27, 2013. S.C. asked Torrence
> whether he needed any help, and Torrence replied he was just looking. Torrence
> went over to the iPhone display at the front of the store, and S.C. heard the
> alarm go off. S.C. initially thought Torrence accidentally pulled too hard on the
> security cable. As she went over to check, Torrence ran out of the store. S.C.
> saw the iPhone was missing and chased after Torrence. She saw the iPhone in
> Torrence's hand and reached to grab it. Torrence told S.C. not to "mess with"
> him and showed S.C. a gun in his right hand. S.C. backed away, and Torrence
> left with the iPhone.
>
> Torrence asserts the evidence was insufficient because "[t]he State presented
> no evidence that [Torrence] took the phone by force or threat of bodily harm."
> Essentially, he argues the taking was complete before any threat of force or
> bodily harm was made. Whether the taking was complete prior to Torrence
> threatening S.C. is a question of fact. Factual determinations are a question for
> the jury, not this court.
>
> To convict him of aggravated robbery, the State was required to prove Torrence:
> (1) knowingly took property from the person or presence of another by force or
> by threat of bodily harm to any person; and (2) did so while armed with a
> dangerous weapon. See K.S.A. 2016 Supp. 21–5420(b)(1). When viewed in the
> light most favorable to the State, the evidence was more than sufficient to
> support his conviction.
>
> Torrence further argues the State's evidence was insufficient to prove criminal
> possession of a firearm, asserting "the State did not prove every fact necessary
> to constitute the crime beyond a reasonable doubt." However, he does not
> explain which fact or facts the State failed to prove at trial. At best, he
> incidentally raises the point and again fails to argue it, so we deem it waived
> and abandoned. *See Sprague*, 303 Kan. at 425. Instead, Torrence focuses on the
> district court's jury instruction; however, he fails to properly frame or brief the
> issue as a matter of jury instruction error. Again, the point is incidentally raised
> but not argued.

> To convict Torrence of criminal possession of a firearm, the State was required to prove: (1) Torrence possessed a firearm; and (2) had been convicted of a felony within the preceding 10 years. *See* K.S.A. 2016 Supp. 21–6304(a)(3)(A). S.C. testified Torrence had a firearm in his possession, and Torrence stipulated he was previously convicted of aggravated robbery—a person felony. The jury was advised of his stipulation. Torrence fails to acknowledge in his brief the stipulation before the district court which was presented to the jury, much less argue it was insufficient to support his conviction. When viewed in the light most favorable to the State, the evidence of criminal possession of a firearm was more than sufficient to support Torrence's conviction.

*Torrence*, 2017 WL 1535137, at *6. This court agrees and finds that the Kansas Court of Appeals' conclusion on these issues were neither contrary to, nor an unreasonable application of, clearly established federal law.

Accordingly, Petitioner's application for relief on this ground is denied.

### E.   No *Brady* Violation

Finally, Petitioner argues that he was denied due process by the prosecution withholding favorable impeachment evidence illustrating a detective on his case had previously falsified DNA evidence to obtain a search warrant in an unrelated criminal case. (Doc. 1 at 44.) Specifically, Petitioner states "that Detective David Alexander—of the Wichita Police Department—and detective in the present petitioner's case—falsified DNA evidence in Fareed Halibi's case to secure a search warrant against Mr. Halibi." (*Id*.) The government asserts that "Petitioner raised this same challenge on direct appeal," which, after thoroughly reviewing the procedural history of Petitioner's claim, was reasonably denied by the Kansas Court of Appeals. (Doc. 13 at 25.) Petitioner's claim does not rise to the level of a constitutional violation.

In summarizing Detective Alexander's alleged falsification of evidence, the government explained:

> Detective Alexander stated in the affidavit that he wanted to compare the DNA of the defendant to possible DNA swabs originating from a Gatorade bottle

> located at the scene. Alexander believed when he wrote the search warrant application that the Gatorade bottle in the possession of the police department had already been swabbed by crime scene investigators. Instead the scientist who analyzed the DNA swabbed the bottle when it arrived at the lab.

(Doc. 15, Vol. III at 97.) Besides the mistake being immaterial, the government further argued that Detective Alexander did not identify Petitioner; rather, "[t]he victims of the crimes, photographs, [and] video" evidence provided the needed identification.  (*Id*. at 97-98.)

In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. 83, 87 (1963).  "*Brady* applies to impeachment evidence, or evidence affecting witness credibility, '[w]hen the reliability of a given witness may well be determinative of guilt or innocence.'"  *United States v. Durham*, 902 F.3d 1180, 1221 (10th Cir. 2018) (quoting *Giglio v. United States*, 405 U.S. 150, 154-155 (1972)).  In order to establish a *Brady* violation, Petitioner must show that: "(1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense."  *Scott v. Mullin*, 303 F.3d 1222, 1230 (10th Cir. 2002) (quoting *Banks v. Reynolds*, 54 F.3d 1508, 1516 (10th Cir. 1995)).  "[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different."  *Cone v. Bell*, 556 U.S. 449, 469-70 (2009).

Here, there is no reason to believe a reasonable probability exists that the result of Petitioner's trial would be any different had Detective Alexander's blunder been introduced at trial.  Detective Alexander's testimony was simply an outlining of his interview with LaDonna Barfell, another government witness who testified at trial and gave an in-court identification of Petitioner.  (Doc. 15, Vol. III at 101.)  And, regardless, Detective Alexander's testimony pales in

16

comparison to the other trial evidence presented, including: a victim making an in-court identification of Petitioner; fingerprint evidence linking Petitioner to the crime scene; Petitioner being identified as the perpetrator from a photo array; and LaDonna Barfell's testimony implicating Petitioner as the robber.  (*Id.*)

Moreover, Detective Alexander's mistake was inadmissible under Kansas law, *see* K.S.A. 60-422, meaning the mistake "is not 'evidence' at all."  *See Wood v. Batholomew*, 516 U.S. 1, 6 (1995) (holding evidence barred under state law "could have no direct effect on the outcome of trial, because respondent could" not introduce the statements during trial).  Prior to sentencing, Petitioner argued for a new trial based upon an alleged *Brady* violation.  In ruling on Petitioner's motion, the state district court determined that Petitioner did not suffer a constitutional violation. Specifically, the district court found the newly discovered evidence was inadmissible under Kansas law, explaining:

> Evidence which D seeks to admit at a new trial, i.e. Detective Alexander's false (i.e. incorrect) statement in an application for search warrant is inadmissible evidence pursuant to K.S.A. 60-420, 421, and 422 regardless of the intent of affiant in making the false/incorrect statement.  Moreover or in the alternative, the evidence, if admissible, merely tends to impeach or discredit the testimony of Detective Alexander.  No other credible corroborating evidence relevant to Detective Alexander's credibility exists.
>
> NOTE:  The Court explicitly rejects D's continuing assertion that a prior contact/relationship between Detective Alexander and LaDonna Barfell existed.
>
> Thus, even if D had affiant/application information before a retrial, because of its inadmissibility as a matter of law, D's pretrial knowledge of the same would not likely produce a different result upon retrial, especially in light of the overwhelming evidence of guilt produced at trial which is independent of any trial testimony given by Detective Alexander.  In the alternative, assuming the evidence were admissible, it merely tends to impeach Detective Alexander and no corroborating impeachment evidence exists; as such, the impeaching evidence is not of such materiality that it is likely to produce a different result upon retrial.

> NOTE: The Court assumes for purposes of this ruling that the affiant/application information could not, with reasonable diligence, have been produced at D's trial.

(Doc. 15, Vol. III at 102.)  On review, this rationale was affirmed by the Kansas Court of Appeals in finding:

> Under K.S.A. 60–422, "[a]s affecting the credibility of a witness ... evidence of specific instances of his or her conduct relevant only as tending to prove a trait of his or her character, shall be inadmissible." The circumstances surrounding Detective Alexander's statements were not pertinent to Torrence's case. There was nothing materially exculpatory in Detective Alexander's statement. Moreover, there is no indication Detective Alexander knowingly or purposefully made a false statement. The evidence merely shows Detective Alexander was mistaken as to the timing of the collection of evidence in an unrelated case. At best, this evidence only tends to impeach Detective Alexander's credibility. The district court properly found it was inadmissible pursuant to K.S.A. 60–422.

*Torrence*, 2017 WL 1535137, at *8.  Petitioner has failed to offer any meaningful argument to the contrary and this court agrees with the state courts' findings.

Accordingly, Petitioner's application for relief on this ground is denied.

### F.   Petitioner's Discovery Motions Lack Good Cause (Docs. 24, 25.)

Lastly, Petitioner requests post-conviction discovery for: DNA evidence, incident reports, evidence chain of custody receipts, and fingerprint results from a firearm used in connection with his underlying crimes.  (Docs. 24, 25.)  Petitioner contends that he requires these items "to demonstrate not only 'cause and prejudice' but that he was not 'duly' convicted as required by the United States Constitution."  (Doc. 25.)  The government argues Petitioner has failed to illustrate how obtaining any of these materials demonstrates he is entitled to relief.

A federal habeas petitioner "is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Rather, Petitioner is entitled to discovery if he establishes "good cause."  *Wallace v. Ward*, 191 F.3d 1235, 1245 (10th Cir. 1999).  "Good cause

is established 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief.'" *Simpson v. Carpenter*, 912 F.3d 542, 576 (10th Cir. 2018) (quoting *Wallace*, 191 F.3d at 1245)).

Here, Petitioner fails to demonstrate how he would be entitled to any relief, even if his allegations were true.  Petitioner repeatedly states the government's evidence at trial was weak, but as noted in discussing his *Brady* claim, he fails to rebut any evidence presented against him at trial.  Indeed, the government even states it "did not rely on this DNA evidence in obtaining Petitioner's conviction."  (Doc. 27 at 5.)  Petitioner has not explained how any of these requested materials support his habeas claims at all.  Accordingly, the court will not authorize "a mere fishing expedition based on [Petitioner's] mere hopes of finding exculpatory evidence."  *United States v. Velarde*, 485 F.3d 553, 561 (10th Cir. 2007).

## IV.    Conclusion

Petitioner's application for a writ of habeas corpus and his motions for discovery (Docs. 1, 24, 25) are DENIED.

IT IS SO ORDERED this 9th day of February, 2022.


   s/ John W. Broomes
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE